The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons who have any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw a knight and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. Thank you. Please be seated. I want to welcome you to the first live argument since January of 2020, so we're looking forward to hearing from you. And I assume the clerk's office told you about the mask. If you've been vaccinated, you don't have to have a mask on. One thing, we all came up Wednesday, and then yesterday we spent the whole day reviewing the actual documents, although we had been provided with a summary. And we do not need to hear from you about the Pfizer issue unless it's just something burning in your heart and mind. So otherwise, we're ready to proceed. It's Mr. Norse. Yes, good morning, Your Honor. I may please the Court. My name is Anthony Norse. I am here with my co-counsel, Mark Petrovich. This morning, I was going to be addressing the procedural aspects of the Pfizer warrant. However, it appears that the Court does not need further argument on that issue. So I will be addressing the sufficiency argument presented in Section 4 of the opening brief, as well as the equal protection argument presented in Section 5 of the brief. My colleague, Mark Petrovich, will address the double jeopardy issue presented in Section 2, as well as the sufficiency issue presented in Section 3 of Section 6. Your Honor, with respect to the sufficiency argument from Section 4 of the opening brief, that deals with transfer of obscene materials to minors. Under that code section, to find the appellant guilty of count 3 of the indictment, it requires substantial evidence beyond a reasonable doubt that the appellant had actual knowledge that the complaining witness was less than 16 years old. It's important to note that during the appellant's interview with the FBI, he repeatedly denied having that knowledge. He denied it, but he had her permanent resident card or some sort of card that had her date of birth on it, correct? He did. He had a photograph. And he taught at her school for nine years. Five to six of those years, she was there, correct? Yes, ma'am. And he wished her a happy birthday when she turned 15 that year, right? The year of his arrest? Correct. Okay, so where are you going with this? So what I'm saying is that he knew, by wishing her the happy birthday, we acknowledge he knew the birth date, not necessarily the year. With respect to the permanent resident card, that card had a lot of information on it. What year did she start? What year, what grade was she in when she started in the school where he taught? Your Honor, I apologize. I'm not aware of which grade she was in at that time. However... How big was the school? The school that... Where he taught. That was just a religious school. Right, so it wasn't very big? It was a small school, yes, ma'am. Right, one would assume he knew her. He knew her family, too. He did know the family, and he had known her for some time. However, as far as her educational, the year that she was in school goes, that doesn't necessarily indicate how old she was. Wasn't she nine when she started there? Your Honor, I believe that is accurate, although I'd have to confirm that later. What do you do about the conversation where there was an exchange that in nine years I'll be 24 or 25? Well, and that's part of the problem that we have. There were a lot of different ages that were discussed when he talked to her. She would tell him sometimes that she was under 15, sometimes that she was over 15, sometimes that she was as old as 18 years old. And so there was a lot of misinformation and a lot of contradictory information that was provided to Mr. Kokai. Well, isn't there enough circumstantial evidence just based on these questions that you've been asked that a reasonable fact finder could find that he did have knowledge? In order for the fact finder to find that there was knowledge, there has to be substantial evidence for making that choice. That is the evidence that they're going to rely upon. Well, circumstantial evidence can be substantial, though. It can be. We've all just ticked through five to ten pieces of circumstantial and some direct evidence, this permanent resident card. So at what point does it not tip over to substantial? Well, Your Honor, I would say because he did deny repeatedly that he knew her age. Of course he denied. He denied it? I mean, that's the nature of we're going to trial. Correct. However, I would point out that he had a very extensive interview with the FBI where he admitted many incriminating things. I believe that in the context of the entire interview, if he denies particular knowledge of one area while he's admitting other incriminating actions, it can make that. But her age is what makes it the crime for which he was charged. Correct. However, at the time of the interview, he did not know what crime he was being charged with and presumably did not know all of the elements, even if he had a rough idea of what he was being charged with. So I would say to the extent that he denied knowing her age to the extent that her conversations with him revealed different ages, that creates some doubt as to what he actually knew because this is an actual knowledge standard, not just should have known standard. In addition, with respect to the ID card, I would say that the Google search that the government relied upon indicated that he was searching for something different besides her birthday. So as he's looking at that ID card, if he saw the birthday, he knows that's not the information I am looking for, and he moves on until he finds the information that he wants, and he then performs a Google search to find out about that number. So I don't think we can, just because he has an ID card with him, I don't think we can just assume that he read it and figured out what her actual birthday was. Now, with respect to the willful blindness aspect of that, such knowledge can be established if the person is aware of a high probability of his existence, unless he actually believes that that fact does not exist. I think that we can, I would argue that he can say that he did not know that fact existed based upon that interview with the FBI. And if he does not believe that fact exists, the willful blindness cannot be used as a substitute for actual knowledge. So I would say that based upon lack of substantial evidence as to whether or not he knew her age, there is not proof beyond a reasonable doubt that he had actual knowledge that the complaining witness was less than 16 years old. Moving on to Section 5 of the brief, the equal protection argument concerning the disparity of treatment. Under Section 2422B, it requires an individual to knowingly persuade, induce, entice, or coerce an individual who has not attained the age of 18 years to engage in prostitution or any sexual activity. Sexual activity for which any person can be charged with a criminal offense or an attempt to do so. In our case, the criminal charge that the government relied upon was a Virginia misdemeanor. So the behavior that my client engaged in would have been a misdemeanor under Virginia law, punishable by only up to 12 months in jail as a maximum punishment. Well, why isn't protecting minors a rational basis for sentencing disparity between two sovereigns? Protecting minors, I believe, is a rational basis. However, in 2422, there is a Section A and a Section B both for protecting minors, one of which carries a maximum penalty of 20 years. The other, Section B, goes from a mandatory term of 10 years to life. And so there's a disparity just within that code section where if he's using interstate commerce, he gets a mandatory 10-year-to-life sentence. If he's face-to-face with her, which is, I believe, far more coercive, he doesn't face that mandatory 10-year sentence. And so, Your Honor, what I would say is that there is a huge disparity when you're looking at a Virginia misdemeanor that goes from one day in jail to 12 months in jail, and using that to bootstrap into a code section that requires a 10-year mandatory minimum sentence and, in fact, can be punished up to life. And I think because 2422 internally has two different sentences, I don't think that we can rely upon the rational basis of trying to protect children as reason to overcome such disparity. Thank you, Mr. Norris. Mr. Petrovich, did I say that right? You did, Your Honor, very well. Mark Petrovich, may it please the Court, Mark Petrovich, on behalf of Mr. Kokai, the pronunciation was spot-on, Your Honor. Thank you. I'm going to be addressing two issues that we raised in our brief. One is concerning issue number two, which is our argument relating to double jeopardy. The other is with regard to the aspects of the child pornography charge, which we raised in issue number three. So initially I'd like to focus the Court's attention on the double jeopardy argument. This argument, as the Court knows, is based on the protection against multiple punishments for the same offense. But in your opening brief, you seem to divide it into at least, it's not maybe so organized by headings, but you talk about the indictment for a few pages, then you talk about the evidence for a few pages. Are you going at it from two angles, the indictment on the one hand, the evidence on the other? I think there's a legal analysis on the one hand, and that was what we were relating to the indictment. The indictment, it seems, has a rule that governs and a waivable issue there, and I know that's part of your position. But you didn't, am I correct that you didn't raise below, you didn't object below, when I say you, your client didn't object below to the evidentiary basis either. So we got to decide whether that was waived or is waivable as well, is that correct? I would note that our position is we did object down below. We objected timely also. The indictment on its face does look like two separate and distinct charges. Where did you object below? At the motion to set aside the judgment, Your Honor. Okay, after the trial. That's correct. Because before the trial, and this is the point I was trying to get to, is if you look at the indictment, it does look like two separate offenses for sure because it has different predicate offenses. Count one is... If you look at the United States Code, it looks like it's two separate offenses. Which code? I'm not following. There's two separate charges. There's two separate crimes charged. There are, but they're both 2422B. And they allege different predicate offenses. But because those predicate offenses aren't elements of the burden of proof, they're not differentiated from a legal perspective. There's no obligation with regard to the predicate offenses to prove each element beyond a reasonable doubt. So that being the case, you have two allegations of violations of 2422B, and then you have these predicate offenses, but those aren't required to be proven. So when you look at the base, boil down the base statute, you have to then look at the facts. And this is what we went into in the brief with regard to the facts. Well, let me ask you this. Let's suppose I rob a bank yesterday and I rob a bank tomorrow. Why can't I be charged with two counts of armed robbery? Those are two separate incidents. In this case, what distinguishes, what makes you say that they weren't separate incidents? They weren't separate incidents because after the trial, and this is why this issue was raised after the trial, after the trial is when we knew what the evidence was that the... No, are we talking about counts one and count two? Yes. Well, it says in the indictment that count one is about the production of the child pornography that he enticed her to produce, and count two is about enticing her to engage in sexual relations, sexual conduct, and sexual acts. That's the two different instances of conduct. It's in the indictment. But in proving count one of the indictment, they relied on, the government relied on, and specifically argued the entire conduct alleged in the trial, including the phone calls and the FaceTime calls. When you look at count two... Because that's part of the coercion to get her to commit the act of take a picture or a video of her in the shower. And then the second one, count two, the entire course of conduct is the coercion part to get her to engage in sexual activity, either what she did in the shower or what he was hoping to do with her when he picked her up at the airport. Well, in proving the count with regard to enticement of a minor, the overall kind of umbrella count, the government argued and the court, in its opinion, relied on all the evidence, including the phone calls and the FaceTime calls. So that's how you're getting around the waiver argument, is that you didn't know all of it until after. That's correct. To prove the enticement count... Okay, so let's assume it's not waived. Yes. How is this not two different crimes? Again, that's continuing my argument. All the evidence was relied upon for count one. The count one relied on, and the court specifically said, we rely on everything presented, all the conduct leading up to his arrest, including the phone calls and the FaceTime calls. Count two is based only on the FaceTime calls. Count one, the evidence relied upon and by both... Is all that evidence? Yes, it was all... So going back to Judge Floyd's analogy, not robbing a bank on two different days, but somebody goes in and robs a bank and then also shoots the person while they're in there, is that two different crimes? That can be two different crimes, but here the crime... So here he coerced her to do two different things and also had her take a picture. But here it was brought under the same statute. If he robbed a bank, you could charge him with robbery. If he then shot someone, you could charge him with malicious wounding or whatever the result of that shooting is. And they could have charged him with production of child pornography. They could have charged him with trying to induce a minor in state court. But they decided to go under 2422B. Why don't we use... Aren't we required to approach this thing under the Brockberger analysis? It would deal with it in terms of elements as opposed to evidence? That's what was the purpose of our brief, is to analyze it under the Brockberger analysis. When you have this situation where you have two identical statutes that are charged in an indictment, you then look at the unit of prosecution. But they're not... The statutes aren't identical, are they? Yes, they are. They're both 2422B. They allege different predicate offenses, but the predicate offenses are not elements of the statute. I see what you're saying. So for the child pornography count, count one, there is a separate statute for production of child pornography, which would have been far harsher, probably, for your client. But the government did not charge that separate statute. Instead, they chose to charge 2422B twice. Correct. That's what you're saying. I understand. But still, am I right to continue with that argument? If the facts are sufficiently separate, it would be okay. Your argument is the facts aren't sufficiently separate. I got that. On that point, though, the government in its brief talks about certain conduct, particularly the arrangement to be picked up at the airport. It doesn't have anything to do with the production of child pornography. What's the problem? What's your response to that? The problem is the flip side. So picking her up at the airport, that's all part of trying to prove the coercion of a minor. That body of evidence and proof subsumed completely the body of evidence relied on to try to prove the other count, count two, which was the production of child pornography. I would compare this to this court's decision in Schnitger a few years back. If you have two hard drives of child pornography, if you have overlapping images, but you have some separate on one hard drive and some separate on another hard drive, then you have two different counts. But if you have one hard drive as A and another hard drive as B, and the hard drive on B contains all of the child pornography on A and then some additional child pornography, it can't be two separate counts because the evidence in B completely subsumes what's in A. And that's the analogy I draw to this. All of the evidence with regard to the enticement count subsumed the evidence required to prove the count two, which was the predicate offense of production of child pornography. All right, thank you very much. You have some time in rebuttal. Mr. Adias? You all are challenging me today with the names. Did I get that right? Yes, but that's okay, Your Honor. Good morning, Your Honors. May it please the Court. I'd like to start with the timeliness issue and then move on to the merits of the multiplicity issue. On the issue of timeliness, as Your Honor observed Judge Quattlebaum, the defendant had an obligation to raise his multiplicity argument prior to trial. He didn't do that, and the only way to do that now is if he establishes good cause for his failure to do it then. Judge Brinkheimer rejected the defendant's good cause argument, holding that the indictment sufficiently put him on notice. That was correct, and on appeal, the defendant doesn't really argue that that was an abuse of discretion, and I think that this Court can affirm on that basis. Assume we agree with you there, can he make an evidence-based argument based on what arose at trial which would not be something that you would be able to raise prior to trial under Rule 12? So the reason why that argument doesn't work in this case, Your Honor, is because prior to trial the government filed a 47-page trial brief. In that trial brief, the government laid out its entire theory of the case, including the theory that the defendant now challenges. It laid out its theory of the case and went point by point, count by count, even element by element, showing what evidence the government intended to use to prove each charge. So on this record, it's impossible to make the argument that you were surprised after trial, which is the first time that they raised the argument, by how the evidence came in because the government told the defendant exactly how it intended to prove its case. So on this record, I don't think that that argument really works. But does he have to be surprised? It seems like surprise is an exception perhaps to the waiver argument. But as I understand it, their arguments are more different than that. There's one related to the indictment, the charging document, and I get the waiver issue there. But with respect to the evidence, even if you do put it in a trial brief, does that prevent them from raising the double jeopardy based on the fact that you're being punished twice for the same conduct? I think it does. And the reason why I say surprise is because the defendant has an obligation to further investigate. It's more about notice than surprise. And I'd point this court to this court's decision in Rue, which is cited in footnote 10 of our brief. In Rue, this court rejected a good cause argument based on the fact that before trial, the government had given the defendant a detailed exhibit list, indicating which witness the government intended to call. And so because the defendant had that exhibit list, the defendant was on notice. He couldn't make an argument that he was surprised. And it's interesting because in Rue, this court noted that even though the exhibit list wasn't 100% clear and even though it wasn't, quote, a roadmap, the defendant was still on notice and had an obligation to further investigate. In that case, it was a suppression issue. Can you tell me, sir, what evidence suggests that the defendant induced the minor to expose herself for the purpose of either producing or transmitting the visual depiction under 2251A? Sure. So the defendant... Specific evidence. Sure. So the defendant instructed the minor on how to masturbate. He did it in great detail. He told her which particular fingers to use, to use her pointer finger and her middle finger. He told her to go step by step, put one finger here, put two fingers there. He told her at one point, put two fingers here, pick up your shorts, put it in. He told her to pull down her pants. She said, no, no. He said, why not? She said she doesn't feel comfortable. He told her, can I see... And then what's the part about where he told her to produce an image to make a video or to take a picture or something like that? These are conversations that they're having on FaceTime, Judge Thacker. Is it being recorded? Well, it's a FaceTime, so it's a live, streaming, face-to-face. Between the two of them. Between the defendant and the victim. And he is instructing her, according to her testimony, to go step by step on how to masturbate. He told her he wanted to see through her underwear. When the victim was asked what she thought he meant by that, she said that he wanted to see her vagina. Again, he told her which particular fingers to use, told her to pull down her pants, to pull up her shorts. And specifically, and this is critical, I think, to your Honor's question, he told her to flip her phone around during this mutual masturbation session. I think the easy inference from the fact that they're FaceTiming in the first place is that he wants to see her. But to the extent that there's any doubt, he told her to flip her phone around. He also coached her, again, step by step on how to remove her bra. One strap off, the second strap off, and pull her shirt down to expose her breasts. And at one point, in a different conversation, he actually said to her, you should take a picture.  The defendant also admitted that she sent her. I mean, the victim calls in boot flashes. Both the victim and the defendant agreed that she exposed her breasts to him. There are also two particular conversations, I think, that really go to your Honor's question. The first takes place on August 11th, which is a key date because we know that on August 12th, they had a sort of post facto conversation. So about last night, did you orgasm too? I saw you staring extra hard at my side. On August 11th, they have a conversation. It takes place at about 1.30 a.m. The defendant says to the victim, can I ask you a question? She says yes. And he says, are you wet right now? And she says yes. And then the defendant says to the victim, aren't you going to ask me a question? Now, the context suggests that he wants her to ask whether he's aroused. And the victim responds, no, I don't need to. I already know the answer. And without missing a beat, the defendant says, can I FaceTime you? Again, that's further evidence of his intent to engage with the minor sexually for the purpose of producing a live visual depiction of that conduct. The same type of conversation takes place on August 22nd, which again is a critical date in this case because that's the date on which they shower together, the date before the defendant was arrested. They're having a conversation. The defendant is repeatedly badgering, bringing up the idea of showering together. Eventually, the victim relents and she says, I'm going to come with you. And again, without missing a beat, what does the defendant say? He says, can I FaceTime you? Again, that's further evidence that he's trying to engage with the minor for the purpose of producing that live visual depiction of that conduct. And again, that's over and above the obvious inference, which is that when you're FaceTiming, you're doing it because you want to see people, which is exactly why they switch from phone call to FaceTime. Right. And then it's several days later when she refuses. She's making up excuses not to do another FaceTime call. And then that's when he just says, well, you should take a picture, indicating that's the equivalent of a FaceTime call. That's right. That's right, Your Honor. On the issue, the multiplicity issue, though, if I could just go back to that for a second. I was addressing Your Honor's point about waiver and why I think the defendant was on notice because of the trial brief. But on the merits of the question itself, and again, opposing counsel brought up this court's decision in Schnitger. And I think that's precisely on point because this court in Schnitger says that the prohibition on multiple punishments only attaches if the offenses are the same in law and in fact. And here they're clearly not the same in fact. And the best evidence of that is just to read Judge Brinkman's opinion. And we're aided tremendously here by the fact that this was a bench trial. So we don't really have to speculate. JA 646 to 649, Judge Brinkman convicts the defendant on counts one and two. She writes a paragraph on count one and a paragraph on count two. She specifies which facts go to count one, which facts go to count two. And they're clearly not the same. And for that reason, the defendant's multiplicity challenge clearly fails. Even if this court does address the merits of the claim, I think it would be on plain error review. And the defendant hasn't really even attempted to show that this error was plain, even if it existed. Is the fact that there are, this is down the line in those arguments, is the fact that there are concurrent sentences have anything to do? Can you have multiple punishments if you have concurrent? Put aside special assessment just for the sake of my question. If you have concurrent sentences, is it multiple punishments? So, I mean, it's not as a practical matter. This court in Goodeen, though, has a pretty long citation to cases of how this court addresses the issue of where there are concurrent sentences. And generally, the court will just remand, vacate the offending conviction, I guess pay back the special assessment. Obviously, as a practical matter, it makes no difference. In another sense, it's sort of harmless. But to the extent that the court were inclined to do that, there would be no impact on the defendant's sentence here. Happy to answer any other questions, Your Honor. Otherwise, I just rely on our brief. Thank you very much. Who's doing the response? Okay, Mr. Fitzgerald. Yes. Initially, I'd like to address, it seemed like there were some points raised with regard to the timeliness of the objection with regard to the double jeopardy issue. First of all, a trial brief is not evidence and it's not even argument. Just about every trial, if not every trial, what you're anticipating to come into evidence, what's accepted into evidence, what's argued also, which is an important aspect of this, and what the judge relies on. We have the benefit of knowing what the judge relies on. Those change from what the trial brief asserts. So the fact that we received the trial brief doesn't, I think, affect this issue at all. The argument is based on 12B3, which essentially is there, if you're supposed to raise this beforehand, if there's a deficiency in the indictment. As I noted earlier, the indictment wasn't deficient. When you looked at that indictment, it did show two charges, 2422B with one set of predicate offenses and then 2422B with another set of predicate offenses. So when you look at the indictment on its face, it's not deficient. What made it problematic was the evidence that was relied upon to prove both the counts. And this was in the judge's opinion, and we strongly disagree with this. It wasn't just overlapping evidence. Again, this is one big circle that subsumed another circle. So it wasn't just overlapping. With regard to the allegations with regard to child pornography, it was the exact same evidence that was relied on for both counts. So on its face, the indictment was not deficient. So we had notions, and we weren't surprised. I think that was pointed out. What about the government's pointing us to the finder of fact, the court here, in the court's memorandum at pages 46 to whatever, sets out two separate sets of circumstances to base the conviction on those two counts. But the sets of circumstances, one is subsumed by the other. I keep going back to that point. So is robbing a gas station, so is armed robbery of a gas station and then shooting somebody while you're in there. If there were a statute that addressed the intent, because this addresses the intent to commit another crime. It's not the crime itself. This is the intent to commit another crime. That's what 2422B is. So if there was a statute that punished the intent to commit robbery and those kind of acts and it was analogous, I would make the exact same argument. But in fact, the way that's charged is you charge the underlying counts themselves, and those are the alleged violations of the law. It's not a statute about the intent of the defendant to commit a crime. It's about the defendant trying to persuade the victim to do something. Here are two different things, to produce an image of child pornography and also to engage in sexual activity with him. I think we're saying the same thing. He's attempting to persuade her to do something, and that's illegal. It's his intent to have her do something illegal, and that's what it's punishing. It's one step above just the underlying conduct. So when you have a generalized statute that encompasses underlying conduct like that, it has to be specific, and the evidence that's relied upon to prove that. Yeah, I do understand what you're saying. Is there any case that supports your argument? I think the cases that the statute sort of, it's been around a while. Well, I think the cases we cited, now we cited Schrader and then the Bell case. The Bell was a Supreme Court case. Schrader was this court. Schrader was a different statutory section, and this goes back to my earlier point about. . . Okay, what about the Supreme Court? Is that this statutory section? It was the Mann Act, which is. . . Right, it's not this section. So are there any on 2422B? Not that I'm aware of. In your argument. . . I'm sorry, go ahead and finish your point there. The Mann Act, that was deemed ambiguous. We couldn't tell by the statute what the unit of prosecution was. Ambiguity goes to lenity, and that requires a ruling of double jeopardy. I apologize. No, no, no, thank you. But, I mean, your argument doesn't seem to require us to find an inherent problem with the statute. It seems to be the evidence isn't sufficiently separate. If the evidence is sufficiently separate, using the same statute is fine, correct? And so one way to deal with this is bad analysis. Is the evidence sufficiently separate? You say it's all the same. They say it's different. You know, the trial court disagreed with you. We can look at that. But am I understanding the structure of the argument? I think that's a fair characterization, yes. I would agree with that. I'm over my time. Would the court like me to address any other points or continue? I think not. Thank you very much for your argument. I see that your court appointed, and we appreciate your service to the court. It's our pleasure. We couldn't operate without gentlemen like you to help us consider cases. So we thank you. We are going to resume the tradition of coming down to greet you. We can do a fist pump, handshake, or a high five. This honorable court stands adjourned. Signed, Godspeed, United States and this honorable court.
judges: Henry F. Floyd, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.